# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.R.**

**No. 19-0539** (Webster County 18-JA-39)

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Custodian C.M., by counsel Howard J. Blyler, appeals the Circuit Court of Webster County's May 1, 2019, order terminating her custodial and guardianship rights to D.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the child, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial and guardianship rights based solely upon her lack of financial means.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2018, the DHHR filed a child abuse and neglect petition against petitioner, alleging that she failed to provide a suitable home for the child.[2] According to the DHHR, it received a referral that petitioner perpetrated domestic violence against the child. The DHHR investigated the matter and learned that petitioner and the child were staying in the home of a registered sex offender. Petitioner and the child were taking turns sleeping on a cot and a recliner and kept their belongings in petitioner's car. The DHHR listened to an audio recording of the fight between petitioner and the child and heard petitioner call the child a "worthless piece of crap" like his father. Petitioner denied hitting the child, stating that she "tapped" him on the side of the head.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner is the child's grandmother.

1

The child reported that petitioner hit him on the side of the head and that it hurt, "but not too bad." The child also reported that he tried to avoid petitioner when she was being hateful. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in October of 2018. The DHHR presented the testimony of a law enforcement officer who testified that petitioner and the child lived in the home of a registered sex offender. The officer also testified that the home was dirty and lacked adequate bedding. Petitioner testified that she was aware that she moved the child into a home with a sex offender. The circuit court found that petitioner was neglectful in moving the child into a home with a registered sex offender. The circuit court noted that petitioner knew a sex offender lived in the home, yet moved the child into the home and attempted to justify the sex offender's conviction, which showed a lack of proper judgment.[3] Accordingly, the circuit court adjudicated petitioner as a "neglectful custodian."

In November of 2018, the circuit court granted petitioner a post-adjudicatory improvement period. As part of the terms and conditions of the post-adjudicatory improvement period, petitioner was ordered to submit to a psychological evaluation, submit to random drug and alcohol screens, attend parenting classes and anger management counseling, and obtain and maintain a fit and suitable residence. Petitioner failed to attend a status hearing held in March of 2019, but was represented by counsel. Testimony established that petitioner had not yet located a suitable home. A Child Protective Services ("CPS") worker testified that petitioner had moved to her brother's home in Martinsburg, West Virginia. The worker also testified that petitioner could not obtain Section 8 housing due to a violation of her rental agreement in Nebraska in which petitioner refused to cease smoking while residing in a nonsmoking unit. Further, the CPS worker explained that she offered to pay the first month's rent and a deposit on an apartment for petitioner, but petitioner refused. After hearing testimony, the circuit court scheduled the dispositional hearing.

The circuit court held a dispositional hearing in April of 2019. Petitioner failed to attend, but was represented by counsel. Petitioner's counsel requested to continue the hearing because petitioner called the circuit clerk's office, stating that her car broke down and that she was unable to make it to the hearing. However, the circuit court noted that petitioner called its office that morning and claimed that she could not make it to the hearing because she did not have a car and was unable to rent one. As such, the circuit court denied the motion to continue. The DHHR presented the testimony of a psychologist who performed petitioner's evaluation. The psychologist testified that her prognosis for petitioner was "guarded." However, after learning that petitioner refused assistance with housing in Webster County, West Virginia, and moved to Martinsburg to live with other relatives, and then moved again to Maryland after the evaluation, the psychologist changed her prognosis for improved parenting to "poor." A CPS worker testified that the DHHR was recommending termination of petitioner's custodial and guardianship rights due to her refusal or inability to find stable housing. Specifically, petitioner refused assistance in paying her first month's rent at an apartment in both Webster County and Martinsburg. In each home where petitioner lived during the proceedings, there were an insufficient number of bedrooms for her and

---

[3]The circuit court declined to adjudicate petitioner as an abusing custodian based upon the alleged physical confrontation.

the child. In fact, as of the dispositional hearing, petitioner was sleeping on a family member's couch in Maryland. The circuit court found that petitioner refused the DHHR's offer to assist her with housing, had not provided a stable home for the child in years, and continued to reside in a home unfit for the child as of the dispositional hearing. The circuit court noted that testimony established that there were "serious risks of detrimental effects on the child due to [the] lack of stability." Ultimately, the circuit court terminated "any rights of [petitioner] as custodian and grandparent" of the child, based upon findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the foreseeable future and that the child's welfare necessitated termination. It is from the May 1, 2019, dispositional order that petitioner appeals.[4]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court should not have terminated her custodial and guardianship rights based solely upon her lack of financial means. According to petitioner, she was unable to secure housing based on her income because she was unable to claim the child on the rental application as he was not in her physical custody. Further, petitioner avers that she successfully completed parenting classes, participated in supervised visitation, and attended anger management classes. Petitioner also claims that she shares a strong bond with the child. As such, petitioner argues that the circuit court erred in terminating her custodial and guardianship rights when the only issue was her financial inability to provide suitable housing. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c), "[n]o reasonable likelihood that the conditions of neglect or abuse can be substantially

---

[4]The parents' parental rights were also terminated during the proceedings below. The permanency plan for the child is adoption by his current foster family.

corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Here, the evidence establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help. The allegations which led to the filing of the petition largely surrounded petitioner's decision to move the child into a home with a sex offender. Following petitioner's adjudication, the DHHR offered petitioner assistance in locating appropriate housing in Webster County, but petitioner refused. Petitioner then moved to Martinsburg to live with her brother, but was not permitted to stay in the home during the day. Again, the DHHR offered petitioner assistance in paying her first month's rent at an apartment, but petitioner refused. Petitioner moved another time to Maryland and lived in a home unsuitable for the child, as there were inadequate bedrooms and petitioner slept on the couch. While petitioner contends that her only obstacle to obtaining housing was the child's placement outside of her home, we note that the DHHR offered assistance to petitioner several times, but she refused their aid. Additionally, petitioner contends that even if the DHHR paid the first month's rent, she would have been unable to pay the ongoing rent due to her income. However, petitioner offers no evidence as to the amount of rent she would have paid and relies only upon her self-serving statements. Further, the evidence shows that petitioner spent $250 a month on a storage unit for her furniture that could have gone towards rent had she accepted the DHHR's assistance in finding an apartment. Based on the foregoing, we are unable to conclude that the circuit court terminated petitioner's custodial and guardianship rights based upon her lack of financial means. Rather, it was petitioner's refusal to accept assistance in finding suitable housing that led to the termination of her rights.

To the extent petitioner argues that she completed or meaningfully participated in other services, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Moreover, "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (quoting syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). The record establishes that a psychologist evaluated the child and testified that "[c]hildren that don't have [a structured, stable home environment] tend to display a higher risk of mental health related issues, anxiety, things of that nature." The psychologist opined that the child needed a stable home and that, were petitioner to continue to have inconsistent housing, it would create an increased risk of trauma for the child. Further, petitioner's prognosis for improved parenting was determined to be poor, and she failed to participate in either the last status hearing or the dispositional hearing.

Based upon petitioner's refusal to accept housing assistance and the increased risk of trauma to the child based upon petitioner's inability to maintain consistent housing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. We have held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find that petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 1, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison